1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10
11   DUNCAN LINDSEY,                          Case No.:  16-cv-00959-GPC (DHB)
12                          Plaintiff,        **ORDER REGARDING JOINT**
13   v.                                       **MOTION RE DISPUTED**
                                              **PROTECTIVE ORDER**
14   ELSEVIER INC., et al.
15                          Defendants.       **(ECF No. 12)**
16
17          On July 8, 2016, Plaintiff Duncan Lindsey ("Plaintiff") and Defendants Elsevier,
18   Inc., Elsevier B.V., and Elsevier, Ltd. (collectively "Elsevier") filed a Joint Motion
19   regarding a disputed protective order.  (ECF No. 12.)  The parties represent they have
20   agreed upon a form of protective order in all respects except one: they disagree about
21   whether the protective order should have an "Attorneys' Eyes Only" ("AEO") level of
22   confidentiality designation that would preclude Plaintiff from reviewing documents with
23   that designation.  (*Id*. at p. 1, lines 5-9.)  For the reasons discussed below, the Court finds
24   Elsevier has failed to establish good cause for the inclusion of an AEO provision in the
25   protective order.
26   **I.      BACKGROUND**
27          Plaintiff commenced this action against Elsevier on March 17, 2016, alleging breach
28   of contract, fraud, breach of fiduciary duty, constructive fraud, and breach of implied

covenant of good faith and fair dealing. (ECF No. 1-2, Exh. A.) Plaintiff, a former tenured full Professor at the University of California, Los Angeles, alleges Elsevier failed to pay him royalties owed under a written contract for a scholarly research journal about children and youth services that Plaintiff developed and has edited for thirty-eight years and Elsevier published. (*Id.* at ¶¶ 1, 7.)

In 1978, Plaintiff and Elsevier's predecessor, Pergamon Press, entered into a written contract to develop and publish a journal called "Children and Youth Services Review" ("CYSR") which became the premier research journal in the field of child welfare social work. (*Id.* at ¶ 1.) Under the contract, Plaintiff was to receive each year 15% of the net subscription income received "in respect of institutional subscriptions to the journal over and above the first 750 institutional subscriptions" in the form of royalty payments. (*Id.* at ¶¶ 1, 17.) Plaintiff alleges Elsevier has never paid him any compensation, maintaining none was ever due. (*Id.* at ¶¶ 3, 6.) Elsevier and its predecessor repeatedly informed Plaintiff that the threshold of 750 subscriptions was never met. (*Id.* at ¶ 3.) Plaintiff alleges that Elsevier has obfuscated, misled, and failed to disclose the truth about the way it is calculating its subscriptions and his royalties. (*Id.* at ¶ 6.) In this lawsuit, Plaintiff seeks damages, disgorgement of profits, rescission, accounting, and declaratory relief. (*Id.* at p. 19.)

## II.   DISCUSSION

### 1.   Legal Standard

Rule 26 of the Federal Rules of Civil Procedure provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rule 26 authorizes the court, upon a showing of good cause, to issue a protective order to "[a] party . . . from whom discovery is sought . . . to protect [that] party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The court's order may, among other things, forbid the discovery; "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters"; or "require[] that a trade secret or other confidential research, development, or commercial information not be revealed, or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(A), (D), (G).

The party seeking a protective order bears the burden of establishing good cause. *Rivera v. NIBCO, Inc*., 384 F.3d 822, 827 (9th Cir. 2004). "'Good cause' is established where it is specifically demonstrated that disclosure will cause a 'specific prejudice or harm.'" *Id*. (citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). The showing of good cause under Rule 26 is a "heavy burden." *Id*. (citing *Blankenship v. Hearst Corp*., 519 F.2d 418 (9th Cir. 1975)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id*. (citing *Phillips*, 307 F.3d at 1211-12). "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Id*. (quoting *Rivera v. NIBCO, Inc*. 364 F.3d 1057, 1063-64 (9th Cir. 2004)).

District courts have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Phillips*, 307 F.3d at 1211 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). In addition, district courts have "broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information." *Id*.

///
///

2.   <u>Discussion</u>

The parties agree that a protective order is appropriate in this case.  The only dispute is whether the protective order should contain an AEO provision to cover documents Elsevier deems highly confidential and sensitive and/or trade secrets.  (*See* ECF No. 12 at p. 1.)  As the party seeking the AEO provision, Elsevier bears the burden of establishing good cause for its inclusion in the protective order.  *See Rivera*, 384 F.3d at 827.  To establish good cause, Elsevier must demonstrate that disclosure will cause specific prejudice or harm.  *See id*.  In evaluating prejudice or harm in cases "[w]here trade secrets or other confidential commercial information is involved, the court will balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims."  *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc*., 242 F.R.D. 552, 555 (C.D. Cal. 2007) (citing *Brown Bag Software v. Symantec Corp*., 960 F.2d 1465, 1470 (9th Cir. 1992)).

This balancing test "requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure." *Id*.  The district court should factor in "the nature of the claims and of a party's opportunity to develop its case through alternative discovery procedures." *Brown Bag Software*, 960 F.2d at 1470.  The court should also factor in whether the receiving party is "involved in 'competitive decisionmaking'; that is, advising on decisions about pricing or design 'made in light of similar or corresponding information about a competitor.'" *Id*. (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)).  The resulting protective order should strike a "reasonable balance" between the parties' interests. *Id*. at 1471.

a.   *Risk of Inadvertent Disclosure*

Elsevier argues that although Plaintiff is not currently a competitor involved in competitive decision-making, he may be a competitor in the future.  (ECF No. 12 at pp. 5-6.)  Elsevier contends that although Plaintiff claims he plans to retire, "regardless of [his] pronounced plans, it would be impossible to prevent him from starting a competing journal at the end of this litigation." (*Id*.)  In addition, Elsevier claims that Plaintiff seeks rescission

4

of his contract in the Complaint, and if he is successful, Plaintiff has threatened this will give him ownership of the CYSR journal. (*Id.*)

In response, Plaintiff argues that he has never been a competitor of Elsevier; rather, he has been the editor of Elsevier's CYSR journal for the past thirty-eight years and to this day continues to work for Elsevier as the journal's editor. (*Id.* at pp. 11-17.) Plaintiff asserts that he is a retired university professor, who has dedicated his academic career to child welfare and social work, and that he has never been, and is not currently, a publisher, and has no intention of becoming a publisher. (*Id.* at pp. 15-16; *see also* ECF No. 12-3, Declaration of Dr. Duncan Lindsey ("Lindsey Decl.") at ¶¶ 2-3.) Plaintiff acknowledges that his contract with Elsevier will expire in 2018 absent renewal, but at that time he will be in his early 70s and states that he plans to retire from editing. (*Id.* at p. 16; Lindsey Decl. at ¶ 3.) Plaintiff further asserts that he has no intention of working on another journal or starting a new journal, and has no intention of competing with Elsevier in the future. (*Id.*; Lindsey Decl. at ¶ 4.)

Elsevier argues the *Nutratech* case is directly on point. (*Id.* at p. 8.) The Court disagrees, finding the cases factually distinguishable. In *Nutratech*, the court analyzed whether the president of the plaintiff company should be allowed to review materials in order to properly prepare the plaintiff's case, and found that the defendant's fear of competitive harm was legitimate. *Nutratech, Inc.*, 242 F.R.D. at 554-55. However, in *Nutratech*, while the plaintiff argued it was not in direct competition with the defendant company as it sold to different buyers, the plaintiff also described the parties as competitors throughout its proposed protective order and admitted it sold the same product. *Id.* at 555. Thus, the court found the defendant's fear of competitive harm from the disclosure of its supplier and customer lists to the plaintiff's president to be legitimate. *Id.* Here, Plaintiff is not currently in competition with Elsevier, and the Court does not find Elsevier's fear of a current employee potentially starting a competing business in a brand new field in his early 70s to be remotely as legitimate as, or even comparable to, the fear of disclosing

supplier and customer lists to the president of a competing business currently in the same field.

In *Mad Catz Interactive, Inc. v. Razor USA, Ltd.*, No. 13cv2371-GPC (JLB), 2014 WL 4161713 (S.D. Cal. Aug. 19, 2014) (Burkhardt, J.), the court undertook an extensive analysis of the role played by the plaintiff's general counsel to determine whether he was a competitive decision-maker, before finding the general counsel's role would not give rise to an unacceptable risk of disclosure such that he should be denied access to the defendant's highly confidential information. *Id.* at *2-5. Such an extensive analysis is not necessary here. Undisputedly, Plaintiff is not presently a competitive decision-maker, nor is he a competitor or an individual who interacts with competitors. Elsevier's argument therefore rests on the concern that Plaintiff may be a competitor in the future. However, the argument that Plaintiff may be a competitor in the future is not only highly speculative, but in light of Plaintiff's representations, his career history, his retirement status, and his age, also highly unlikely. Therefore, the Court finds the risk of inadvertent disclosure and competitive harm to be low.

### b.   *Potential Harm from Inadvertent Disclosure*

Although formal discovery may have only recently commenced, Elsevier argues that Plaintiff has indicated he will seek highly confidential and sensitive information. (ECF No. 12 at p. 2; ECF No. 12-1 at ¶¶ 2-5, Exh. A.) In particular, Elsevier is concerned about disclosure of financial information and publishing agreements for unrelated journals that are published and distributed by Elsevier. (*Id.* at p. 3.) Elsevier argues that its publishing agreements with unrelated journals are highly confidential and contain protected business and trade secret information, as well as confidentiality provisions. (*Id.*) Elsevier is also concerned about the production of the following categories of documents: journal subscriber lists; pricing and financial information; royalties payable; IRS 1099 tax forms for its editors, owners, staff, and other personnel affiliated with thousands of journals; expense reimbursements, subsidies and honorariums paid for other journals from 1978 to present; Elsevier's costs in printing journals versus converting them to electronic media;

formulas for allocation revenues; identity of subscribers, marketing data; and possibly source code, technical information and internal formulas for setting up bundled plans and electronic search mechanisms. (*Id*. at pp. 3-4.) Elsevier contends these categories include protected trade secret information, and highly confidential documents that implicate privacy rights and are covered by the taxpayer privilege. (*Id*. at p. 3; *see also* ECF No. 12-2 at ¶¶ 2-3.)

As formal discovery may have only recently commenced, which, if any, of these documents will be produced is yet to be determined.[1]  The parties generally do not dispute that several of these categories of documents may contain highly confidential information and/or trade secrets, and that a protective order is warranted and must be followed.  In his declaration submitted in support of the Joint Motion, Plaintiff states that he will comply with the confidentiality provisions of a protective order, and he will be bound by this order. (Lindsey Decl. at ¶ 5.)  Although Elsevier has not met its "burden of showing that specific prejudice or harm will result from the disclosure of each document (or item of information) that it seeks to protect," because Plaintiff does not dispute the nature of the documents, the Court will assume for purposes of this motion only that the categories of documents at issue contain highly sensitive and confidential information and/or trade secrets.  *See Nutratech, Inc*., 242 F.R.D. at 554 (citing *Foltz v. State Farm Mut. Auto Ins. Co*., 331 F.3d 1122, 1130 (9th Cir. 2003)).

### c.   *Prejudice to Plaintiff*

"A showing that the protective order increases the difficulty of managing litigation, without more, does not constitute actual prejudice."  *Mad Catz Interactive, Inc*., 2014 WL 4161713, at *6 (citing *Intel Corp. v. VIA Techs., Inc*., 198 F.R.D. 525, 529 (N.D. Cal. 2000)).  "The protective order must actually prejudice presentation of the moving party's case."  *Intel Corp*., 198 F.R.D. at 528.  Courts have found good cause to outweigh the risk

---

[1]      The parties spend time arguing relevance in their Joint Motion.  However, a request for determination of relevance is not presently before the Court.

of inadvertent disclosure and permit access to confidential information where, because of the technical nature of a case, specialized knowledge is necessary to supervise the litigation.  *Id*.  In addition, courts may also consider financial hardship as a factor when evaluating the balancing test, but it is not dispositive.  *Mad Catz Interactive, Inc*., 2014 WL 4161713, at *6 (citing *RPA Int'l Pty Ltd. v. Compact Int'l, Inc*., No. 06cv1147, 2007 WL 4105725, at *3 (S.D. Cal. Nov.16, 2007)).

Plaintiff argues he will be severely prejudiced if he were barred from reviewing Elsevier's financial information and agreements relevant to his claims.  (ECF No. 12 at pp. 19-20.)   He argues that his inability to review Elsevier's financial information would preclude him from "meaningfully participating in this litigation, analyzing his damages, engaging in settlement discussions, or preparing his case for trial."  (*Id*. at p. 19, lines 4-6.) Plaintiff asserts that his counsel has "no expertise with regard to subscriptions, institutional subscribers, journal publishing, editorial compensation and other issues at the heart of this litigation," and that he cannot afford an expensive team of expert consultants.  (*Id*. at p. 19, lines 15-17.)   He states that he "will be relying on his own expertise and decades of experience as an editor of an Elsevier journal to analyze Elsevier financial and contractual data and make important determinations regarding the validity of Elsevier's factual defenses, his damages, the adequacy of Elsevier's settlement proposals and all other key decisions affecting his rights in this litigation." (*Id*. at p. 19, lines 18-23.) He further asserts that he will "rely on counsel to present his case in court, but all factual conclusions, the factual preparation of his case for trial, and any settlement decisions can only be made by [him]."  (*Id*. at p. 19, lines 23-26.)

Although Plaintiff's counsel is more than qualified to assist with analyzing and preparing Plaintiff's case, the Court finds Plaintiff is uniquely qualified to evaluate Elsevier's financial and contractual data, and based on that data, Elsevier's claims and defenses.  Given Plaintiff's extensive experience working in the field and with Defendant, and Plaintiff's claimed lack of extensive funds, the Court further finds Plaintiff would be prejudiced if he were not permitted to review Elsevier's information.

1    Weighing all the factors and examining all the risks and safeguards surrounding

2  inadvertent disclosure, the Court finds Elsevier has failed to establish good cause to include

3  an AEO provision in the protective order.  In making this finding, the Court places

4  particular emphasis on Elsevier's failure to demonstrate that Plaintiff is presently a

5  competitor, there is a likelihood that he will be a competitor in the future, or that there is a

6  high risk of inadvertent disclosure to a competitor.

## III.   CONCLUSION

8    Based on the foregoing, the Court finds Elsevier has failed to establish good cause

9  for the entry of an AEO provision in the protective order.  Accordingly, the Court will issue

10  a protective order in the form attached as Exhibit D to the Declaration of Jennifer Jonak.

11  (ECF No. 12-1, Exh. D.)

12    IT IS SO ORDERED.

13  Dated:  August 19, 2016

DAVID H. BARTICK
United States Magistrate Judge

16-cv-00959-GPC (DHB)