UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNCAN LINDSEY, PH.D, <br><br> Plaintiff, <br><br> v. <br><br> ELSEVIER INC., ELSEVIER B.V., ELSEVIER, LTD., <br><br> Defendants. | Case No.: 16cv959-GPC(DHB) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIM** <br><br> [Dkt. No. 41.] |

Before the Court is Defendants' motion for leave to file an amended answer and counterclaims. (Dkt. No. 41.) Plaintiff filed an opposition on July 28, 2017 and Defendants filed a reply on August 4, 2017. (Dkt. Nos. 45, 52.) Based on the reasoning below, the Court GRANTS Defendants' motion for leave to file first amended answer and counterclaim.

**Background**

On April 20, 2016, the case was removed from state court. (Dkt. No. 1.) Plaintiff Duncan Lindsey, Ph.D. ("Plaintiff" or "Dr. Lindsey") filed a complaint alleging state law causes of action for breach of contract, fraud, breach of fiduciary duty, constructive fraud, breach of the implied covenant of good faith and fair dealing, rescission, accounting and declaratory relief against Defendants Elsevier Inc., Elsevier B.V, and Elsevier, Ltd.'s

("Defendants" or "Elsevier") failure to pay him royalties allegedly owed under a written contract for a scholarly research journal. (Dkt. No. 1-2, Compl.) On July 28, 1978, Plaintiff, a distinguished scholar in the field of social work, entered into a contract with Defendants' predecessor, Pergamon Press, to develop and publish a journal called "Children and Youth Services Review" ("CYSR") which became the premier research journal in the field of child welfare social work. (Id. ¶ 1.) The contract provides that Dr. Lindsey is responsible for the content of the journal, that the journal would be published and owned by Pergamon Press and it would pay Dr. Lindsey each year "15% of the net subscription income received in respect of institutional subscriptions to the journal over and above the first 750 institutional subscription." (Id., Ex. A ¶ 6(a).) As to individual subscriptions, Dr. Lindsey would be paid per year "10% of the net subscription income. . . over and above the first 500 such subscriptions and up to the first 3,000 such subscriptions; and 15% of net subscription income from all subscriptions over and above 3,000." (Id. at ¶ 6(b).) Pergamon Press also agreed to pay a $2000 "editorial subsidy" during the first year to cover portions of the editorial and office expenses. (Id. ¶ 7.) It also required Plaintiff to "endeavor to obtain sponsoring subscriptions". (Id. ¶ 6(c).) Moreover, it included a right of first refusal which stated that "[i]n the event that you should, at any time while this agreement is in force, contemplate any other publications, whether journals, books or otherwise, we agree that we shall give any such project our sympathetic consideration; you, on your part, agree that any such project will be presented to us in the first instance." (Id. ¶ 10.)

In 1989, Pergamon Press agreed to increase the editorial subsidy to $2000 per issue. (Id. ¶ 20.) The journal is now published 12 times a years with almost 300 articles. (Id.) In 1991, Defendant Elsevier purchased the assets and assumed the liabilities of Pergamon Press and became its successor in interest. (Id. ¶ 23.) Dr. Lindsey continues to work on the journal under the terms of the contract. (Id.)

Despite the success of CYSR, Plaintiff alleges Elsevier has never paid him any subscription royalties as Elsevier and its predecessor repeatedly informed Plaintiff that the

threshold of 750 subscriptions was never met. (Id. ¶¶ 3, 5, 6.) Plaintiff alleges that Elsevier has "obfuscated, misled, and failed to disclose the truth" about the way it was calculating its subscriptions and his royalties. (Id. ¶ 6.)

Discovery in this case was conducted in two phases. Phase 1 was to consist only of discovery served by Plaintiff so that he could evaluate the amount of Elsevier's subscription income that is attributable to CYSR and then the parties could engage in settlement discussions. (Dkt. No. 41-1, Jonak Decl. ¶ 4.) Phase 1 ended on December 16, 2016. (Id.) However, the deadline for any amendment to pleadings passed on November 14, 2016. (Id.) In Phase 2, Defendants served document requests seeking information relating to Plaintiff's allegations that the substantial annual subsidies that he received from Defendants were merely reimbursement for his out of pocket expenses. (Id. ¶ 5.)

Documents by Dr. Lindsey were not produced until March 31, 2017 and consisted of over 78,000 pages and did not include any metadata. (Id. ¶ 6.) On April 27, 2017, Defendant received a second production duplicating a part of the first production with native files to permit limited searching of documents. (Id.) Plaintiff's most recent production of documents was on June 23, 2017. (Id.) Another production of documents was made after the filing of the instant motion on July 29, 2017 to include an additional 80,000 pages from Dr. Lindsey. (Dkt. No. 52-1, Jonak Decl. ¶ 9.)

From 2008 until 2015, Plaintiff had asked Elsevier to pay part of the editorial subsidy to Renji Mathew ("Renji") in India who Dr. Lindsey claimed was assisting with work on CYSR. (Dkt. No. 41-1, Jonak Decl. ¶ 7.) However, in the initial production of documents, no documents or emails were produced concerning Renji. (Id. ¶¶ 8, 9.) It was only after repeated requests and after preparing a motion to compel, that Plaintiff agreed to provide additional documents. (Id. ¶¶ 11, 16.) It appears this production occurred on July 29, 2017. (Dkt. No. 52-1, Jonak Decl. ¶ 9.)

When Defendants conducted their own independent research of Renji, it was discovered his background is in software development and not editorial or child welfare work. (Dkt. No. 41-1, Jonak Decl. ¶ 12.) During the time when Dr. Lindsey was using

Mathew's services, Plaintiff "was involved in software ventures utilizing personnel from India that were developing applications matching the identical services provided by Renji and his company, Sykronit. Our investigation has also revealed that Synkronit provided application development services to Webport, one of Lindsey's companies, and helped produce some of its apps, including Airport Pro. Renji and/or Synkronit may also have provided services to other of Lindsey's business ventures." (Id. ¶ 13.) Elsevier believes that the monies sent to Mathew had nothing to do with CYSR and Dr. Lindsey was defrauding Elsevier by having it pay for software development for his own private companies. (Id. ¶ 15.)

Defendants also discovered evidence in Plaintiff's document production that he claimed $1.3 million in expenses for CYSR but the expenses appear to be related to his other business ventures. (Id. ¶ 17.) When asked to produce receipts to support these expenses, none that were related to CYSR were produced. (Id.) Moreover, other evidence revealed that Dr. Lindsey never made any attempts to obtain sponsoring subscriptions, made no attempts to appoint Associate Editors as contemplated by the contract, and that he breached the right of first refusal. (Id. ¶ 19.)

Based on the newly discovered evidence, Defendants seek leave of Court to file a counterclaim against Plaintiff for breach of contract, fraud, and conversion. (Dkt. No. 41-4, Proposed Am. Ans. and Counterclaim.) Plaintiff opposes.

## Discussion

### A. Federal Rule of Civil Procedure 16

Once a district court has established a deadline for amended pleadings, and that deadline has passed, Federal Rule of Civil Procedure ("Rule") 16 applies to modify a scheduling order. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-608 (9th Cir. 1992). A pretrial scheduling order can only be modified "upon a showing of good cause." Fed. R. Civ. P. 16(b). "Good cause" focuses on the diligence of the party seeking an amendment. Johnson, 975 F.2d at 609. The pretrial schedule may be modified "if it cannot reasonably be met

despite the diligence of the party seeking the extension." Id. In general, the focus of the diligence inquiry is on the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading. See Zivkovic v. S. Cal. Edison Corp., 302 F.3d 1080, 1087-88 (9th Cir. 2002). Prejudice to the non-moving party, though not required under FRCP 16(b), can supply additional reasons to deny a motion. Coleman, 232 F.3d at 1295. The Ninth Circuit noted that "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Id.; see Sugita v. Parker, 13cv118-AWI-MJS(PC), 2015 WL 5522078, at *2 (E.D. Cal. Sept. 16, 2015) (counsel's carelessness or inadvertence fails to establish "good cause"). Rule 16's good cause standard is more stringent that the liberal amendment standard under Rule 15. AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 952 (9th Cir. 2006).

A scheduling order was filed on September 14, 2016 which set the deadline to amend the pleadings by November 14, 2016. (Dkt. No. 20.) An amended scheduling order, which did not extend the deadlines for amending pleadings, was then filed on January 27, 2017. (Dkt. No. 38.) Because the pleading amendment deadline has long passed, Defendants bear the burden of showing "good cause" to amend the answer and add counterclaims under Rule 16(b). See Zivkovic, 302 F.3d at 1087. Defendants argue that "good cause" exists to extend the deadlines because Defendants were extremely diligent and brought their motion as soon as practicable. In fact, under the parties agreed upon phased discovery, Defendants were not allowed to serve discovery until after the scheduling order deadline had passed on November 14, 2016. Plaintiff does not dispute whether "good cause" exists to extend the deadline to file a motion for leave to amend the answer. The Court finds that good cause has been shown as Defendants have been diligent in seeking discovery and filed the instant motion timely after discovering the facts to support their counterclaims. Therefore, the Court GRANTS Defendants' request to modify the scheduling order to seek leave to file an amended answer and add counterclaims.

/ / / /

**B.      Federal Rule of Civil Procedure 15(a)**

Under Rule 15(a), leave to amend a complaint after a responsive pleading has been filed may be allowed by leave of the court and "shall freely be given when justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a). Granting leave to amend rests in the sound discretion of the trial court. Int'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines, 761 F.2d 1386, 1390 (9th Cir. 1985). This discretion must be guided by the strong federal policy favoring the disposition of cases on the merits and permitting amendments with "extreme liberality." DCD Programs Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." Id.; but see Union Pacific R.R. Co. v. Nevada Power Co., 950 F.2d 1429, 1432 (9th Cir. 1991) (In practice, however, courts more freely grant plaintiffs leave to amend pleadings in order to add claims than new parties).

Because Rule 15(a) favors a liberal policy, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted. Genentech, Inc. v. Abbott Labs., 127 F.R.D. 529, 530-31 (N.D. Cal. 1989). In assessing the propriety of an amendment, courts consider several factors: (1) undue delay, (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously permitted; (4) prejudice to the opposing party; and (5) futility of amendment. Foman, 371 U.S. at 182; United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011). These factors are not equally weighted; the possibility of delay alone, for instance, cannot justify denial of leave to amend, DCD Programs, 833 F.2d at 186, but when combined with a showing of prejudice, bad faith, or futility of amendment, leave to amend will likely be denied. Bowles v. Reade, 198 F.2d 752, 758 (9th Cir. 1999). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).

**1.      Futility of Amendment**

Plaintiff primarily disputes the motion arguing that the proposed counterclaims are

defective by failing to meet the Rule 8 pleading standard, and are consequently futile. Defendants argue they have sufficiently alleged causes of action in their counterclaim.

"A motion for leave to amend may be denied if it appears to be futile or legally insufficient." Miller v. Rykoff–Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Id. "If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Breier v. N. Cal. Bowling Proprietors' Ass'n, 316 F.2d 787, 789-90 (1963) (quoting Foman, 371 U.S. at 182). An amendment "should not be barred as futile if the underlying facts 'may be a proper subject of relief.'" Id. at 790. The "sufficiency of an amended pleading ordinarily will not be considered on the motion for leave to amend." Id. at 790.

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Under Rule 8, detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679; see also Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff.").

Moreover, Rule 8's pleading standard does not prevent a plaintiff from "pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quoting Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana, 786 F.3d 510, 517 (7th Cir. 2015)). Arguments concerning the

sufficiency of the proposed pleadings, even if meritorious, is better left for briefing on a motion to dismiss. Lillis v. Apria Healthcare, No. 12cv52-IEG(KSC), 2012 WL 4760908, at * 1 (S.D. Cal. Oct. 5, 2012).

District courts in the Ninth Circuit have also concluded that allegations in a complaint based on "information and belief" are sufficient to survive a motion to dismiss as long as there is some plausible basis to support a cause of action. See Bernstein v. Health Net Life Ins. Co., Case No. 12cv717-AJB(JMA), 2013 WL 12095240, at *4 (S.D. Cal. Apr. 4, 2013) (citing Hightower v. Tilton, No. C08-1129-MJP, 2012 WL 1194720, at *3 (E.D. Cal. Apr. 10, 2012) ("facts pled 'on information and belief' can survive a motion to dismiss so long as the plaintiff pleads sufficient facts to make the claims plausible under Iqbal-Twombly")).

Here, Plaintiff argues that all the claims fail to meet the pleading standard of Rule 8 as they are conclusory and are devoid of any factual support. He also argues that the allegations are misleading and intended to imply allegations that are not truthful. Furthermore, he maintains that there are no specific facts to toll the statute of limitations. In reply, Defendants argue that Plaintiff seeks to impose a heightened pleading standard to the breach of contract claim and also improperly disputes the facts alleged in the proposed counterclaim which is not proper on a motion to amend.

### a. Breach of Contract

Plaintiff argues that no facts are alleged and the allegations are only based on "information and belief" and are conclusory. Defendants dispute Plaintiff's argument asserting that they have sufficiently alleged a breach of contract claim.

Neither party definitively argues whether California or New York law applies. However, at this time, such a determination is not necessary because the elements for a breach of contract claim in California and New York are the same. A breach of contract cause of action in California and New York requires a 1) contract, 2) plaintiff's performance or excuse for performance, 3) defendant's breach and 4) damages. Wall St. Network, Ltd. v. New York Tiems Co., 164 Cal. App. 4th 1171, 1178 (2008); Harsco Corp.

v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).

Of the elements of a breach of contract claim, it appears that Plaintiff is challenging the allegations to support a breach by Plaintiff. The breach of contract claim alleges that Dr. Lindsey breached Defendants' right of first refusal to consider Dr. Lindsey's publication ideas or projects by failing to present other publication ideas and projects to Elsevier and instead pursued them with another publisher, (Dkt. No. 41-1, Proposed Counterclaim ¶ 104), breached his obligation to "endeavor" to obtain sponsorship agreements by not obtaining any sponsorships, (id. ¶ 107), and breached a general duty of care by using expenses for CYSR for his own personal benefit and for the benefit of his other business ventures, and refusing to appoint other editors and an editorial advisory board for CYSR. (Id. ¶¶ 105, 106.) These allegations are alleged "upon information and belief." (Dkt. No. 41-1, Proposed Counterclaim ¶¶ 104, 106, 107.) However, an allegation based on information and belief is appropriate when the facts are within the possession and control of the opposing party. Defendants assert they did not learn about these issues until about May 2017 when Dr. Lindsey produced documents in response to Defendants' request. They also claim that all evidence to support their counterclaims are in Plaintiff's possession and control. (Dkt. No. 41-1, Jonak Decl. ¶ 20 ("most of the evidence regarding the bases for the counterclaims is in Lindsey's possession or control (or that of his immediate relatives)."). Plaintiff does not dispute this argument instead disputing the specific facts alleged by Defendants. Here, most of the evidence concerning whether Dr. Lindsey breached the contract and whether there was fraud and conversion are within his possession as they concern his conduct during the contract. Therefore, the counterclaim may be alleged "on information and belief" and satisfy Rule 8's pleading standard.

Next, much of Plaintiff's arguments challenge Defendants' interpretation of the contract and dispute the facts alleged; however, such arguments are not proper on a motion for leave to amend. For example, as to Dr. Lindsey's agreement to endeavor to seek sponsorships, he claims he was not contractually obligated to obtain sponsoring subscriptions, that Elsevier and its predecessor knew that he was not able to obtain

sponsorship subscriptions for the past 39 years and yet 39 years later they claim that he breached the contract. These arguments on the merits of the claim are not proper on a motion to amend and the Court is not in a position to resolve any factual disputes. The Court is only obligated to determine whether the alleged facts, taken as true, "may be a proper subject of relief." See Breier, 316 F.2d at 790. As to the alleged breach of the general duty of care as to editorial standards and expense reimbursement issue, Plaintiff again argues that he did not fail to comply with the standard of care in his editorial duties and expense reimbursements based on his interpretation of the contract. Again, such arguments cannot be resolved at this stage of the proceedings.

Based on the allegations presented in the proposed counterclaim, Defendants have sufficiently placed Plaintiff on notice as to the nature of the claims and present facts that plausibly state a breach of contract claim. See Iqbal, 556 U.S. at 678.

Next, Plaintiff argues that the claims are futile because they are barred by the statute of limitations. Arguing that New York law presumably governs the contract, without legal authority explaining why, Plaintiff asserts that the statute of limitation is six years for a breach of contract claim. In response, Defendants argue that California's statute of limitations apply based on California's "governmental interest" analysis.

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). (Dkt. No. 1, Notice of Removal ¶ 5.) Under diversity jurisdiction, the court applies the choice-of-law rules of the state in which it sits, and in this case, it is California. See Mortensen v. Bresnan Comm'ns, LLC, 722 F.3d 1151, 1161 (9th Cir. 2013).

California Civil Code section 1646 provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. Section 1646's purpose "is to determine the choice of law with respect to the interpretation of a contract in accordance with the parties' presumed intention at the time they entered the contract." Frontier Oil Corp. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1449 (2007). The California Court of Appeals concluded that

"notwithstanding the application of the governmental interest analysis to other choice-of-law issues, Civil Code section 1646 is the choice-of-law rule that determines the law governing the interpretation of a contract." Id. at 1442-43. The court of appeal found that although section 1646 applies when interpreting the contract, the "governmental interest" test apply to other "choice-of-law issues" which include the statute of limitations. Id. at 1453, 1459.

While a choice of law analysis on the interpretation of the contract is governed by section 1646, the choice of law analysis on which state's statute of limitations should apply is governed by the governmental interest test. See id.

To determine "whether the relevant California statute of limitations . . . or, instead, another jurisdiction's statute of limitations . . . should be applied in a particular case must be determined through application of the governmental interest analysis that governs choice-of-law issues generally." McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 87 (2010) (citing Ashland Chemical Co. v. Provence, 129 Cal. App. 3d 790, 793-94 (1982) (holding that under California law, governmental interest analysis is applicable to resolve a choice-of-law issue relating to the statute of limitations); Nelson v. Int'l Paint Co., 716 F.2d 640, 644 (9th Cir. 1983) (same).) The governmental interest approach is described as follows.

> In brief outline, the governmental interest approach generally involves three steps. First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state" [citation] and then ultimately applies "the law of the state whose interest would be more impaired if its law were not applied."

Mc Cann, 48 Cal. 4th at 87-88 (quoting Kearny v. Salomon Smith Barney Inc., 39 Cal. 4th 95, 107-08 (2006)).

The parties disagree on whether New York or California law applies to the statute of limitations. A motion for leave to amend is not the proper motion for addressing the applicable statute of limitations that requires full briefing and thoughtful consideration of each state's interest in the case. Plaintiff initially raises the statute of limitations issue in his opposition presuming that New York law applies without any legal analysis on the governmental interest test. Defendants then respond to the argument in its reply applying the governmental interest test. Plaintiff has not had an opportunity to address the governmental interest standard. While the Court has concerns as to whether Defendants' counterclaims may be barred by the statute of limitations, the issue has not been properly briefed and cannot be resolved on this motion. See Gen. Fire & Casualty Co. v. Guy Carpenter & Co., Inc., No. CV05-251S-LMB, 2007 WL 683793 (D. Idaho. Mar. 2, 2007) (merits of statute of limitations defense will not be resolved on motion for leave to amend as motion for summary judgment, rather than motion to amend, is the proper means to address the merits of the defense.)

Plaintiff has not demonstrated that the breach of contract counterclaim is futile.

### b. Fraud and Conversion Claims

Plaintiff argues that the fraud and conversion claims are also futile based on the same reasons as the breach of contract claim. He again argues the merits of the two claims arguing it is not possible to allege fraud and conversion claims based on the terms of the contract. Defendants assert that Plaintiff improperly disputes the facts alleged in the counterclaim.

"To establish fraud, a plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of

inducing the other party to rely upon it, justifiable reliance, and injury." Nerey v. Greenpoint Mortg. Funding, Inc., 144 A.D. 3d 646, 647 (N.Y. App. Div. 2106).[1]

The counterclaim for fraud alleges that Lindsey defrauded Elsevier because he induced it to make, and to continue to make, payments to him as a partial reimbursement of what he claimed to be his editorial costs. (Dkt. No. 41-1, Proposed Counterclaim ¶¶ 112, 117-120, 127-128.) Dr. Lindsey misrepresented and omitted disclosure to Elsevier the "credentials, work, amount, and/or scope of what Renji was doing in India, inducing Elsevier to pay significant editorial subsidies for CYSR, and inducing Elsevier to send monies to Renji, part or all of which was unrelated to CYSR and instead benefitted Lindsey personally and/or his software companies." (Id. ¶ 127.) Dr. Lindsey knew the representations and material omissions of facts were false. (Id. ¶ 128.) Elsevier relied on Lindsey's representations in effectuating his request that a substantial portion of the payments be made directly to Renji Mathew in India. (Id. ¶ 128.) Elsevier was damaged by the amount of payments it sent to Renji for expenses allegedly related to CYSR. (Id. ¶ 130.)

These allegations, taken as true, state a claim for relief for fraud under Rule 8. See Iqbal, 556 U.S. at 679. As to the conversion cause of action, again, Plaintiff merely opposes arguing that the editorial subsidy was lawfully his so there can be no claim for conversion. He does not dispute whether the elements of conversion have been sufficiently alleged but improperly disputes the facts alleged. Accordingly, Plaintiff has not shown that the fraud and conversion claims are futile.

### 2. Undue Delay

Plaintiff contends that Defendants' failure to raise these claims during the past 39 years that the contract has been in effect constitutes undue delay. In their motion, Defendants claim they sought leave to amend after discovery of the relevant facts.

---

[1] Plaintiff cites to New York law for the fraud and conversion claims which Defendants do not dispute.

To determine undue delay, the court considers whether the movant "knew or should have known the facts and theories raised by the amendment in the original pleading." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 953 (9th Cir. 2006) (quoting Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990)).

Here, Defendants assert that they did not learn the editorial subsidy sent to Mathew's in India did not relate to work on CYSR and that he was defrauding Elsevier by having it pay for software development for Lindsey's own private companies until the production of documents recently on March 27, 2017, April 27, 2017, June 23, 2017 and July 29, 2017. Defendants also claim that the facts to support the other causes of action were also recently discovered. Accordingly, the Court concludes that there was no undue delay in filing the motion.

### 3. Bad Faith

Plaintiff argues that the motion is brought in bad faith and is in response to Dr. Lindsey's lawsuit against Defendants for unpaid royalties in order to pressure him to drop his lawsuit. Specifically, he claims that Defendants concealed their plan to assert counterclaims until after the parties designated their experts on June 26, 2017. Plaintiff was confused as to why Defendants' designation of experts included topics that was outside the scope of the complaint. It was not until a few days later, on June 30, 2017, that Defendants delivered the proposed counterclaim to him. (Dkt. No. 45-1, Valle Decl. ¶ 9.) He further claims the meritless claims alleged are examples of bad faith tactics. Lastly, he contends that Defendants never complained about his efforts to obtain sponsoring subscriptions, and his editorial work or practices concerning CYSR. Therefore, based on these assertions, Defendants' counterclaims are designed to harass and scare Plaintiff into abandoning his claims or having him settle at a lower amount.

In response, Defendants assert that their experts were already going to be designated as they were relevant to Plaintiff's claim for "reasonable compensation" sought in the complaint and to their affirmative defenses. Moreover, Plaintiff knew two weeks before rebuttal expert designation about the proposed counterclaims and while defense counsel

offered Plaintiff an additional two weeks to designate any other expert witnesses, he did not. (Dkt. No. 52-1, Jonak Decl. ¶¶ 3, 4, 5, 6, 7.)

The Court concluded above that the counterclaims are not baseless. Defendants assert they timely filed this motion shortly after learning of newly discovered facts from Plaintiff's recent document production. There is no evidence, other than Plaintiff's conclusory allegations, that Defendants brought the instant motion in order to scare Plaintiff to drop the lawsuit. The Court concludes that Plaintiff has not demonstrated that Defendants brought the motion in bad faith.

**4. Prejudice**

Plaintiff argues he will be prejudiced as the counterclaim will expand the nature of the case and he will need to take discovery from Elsevier and Pergamon Press and retake the deposition of Robert Miranda, who signed the contract in 1978 and is 83 years old.

Prejudice is the critical factor in considering motions for leave to amend. Eminence Capital LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) ("Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight. Prejudice is the 'touchstone of the inquiry under rule 15(a).'"). The burden of having to defend a new claim alone is not undue prejudice under Rule 15. See DCD Programs, Ltd. v. Leighton, 833 F.2d at 186 ("[L]iberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties. It is, however, subject to the qualification that amendment of the complaint does not cause the opposing party undue prejudice").

Here, discovery is still ongoing with a deadline of October 23, 2017. (Dkt. No. 40 at 2.) Although Plaintiff may have to retake the deposition of Mr. Miranda and some additional discovery from Elsevier, the counter claim will not alter the litigation to take an entirely new course so as to prejudice Dr. Lindsey. See Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming district court's denial of leave to amend because amendment would have made a radical shift in the nature of the litigation).

15

16cv959-GPC(DHB)

There is still sufficient time for Plaintiff to pursue discovery on the proposed counterclaims. Accordingly, Plaintiff has not demonstrated prejudice.

In light of "the strong federal policy favoring the disposition of cases on the merits and permitting amendments with 'extreme liberality,'" <u>DCD Programs</u>, 833 F.2d at 184, and because the factors weigh in favor of granting leave to amend, the Court GRANTS Defendant's motion for leave to file an amended answer and counterclaim.

## Conclusion

Based on the above, the Court GRANTS Defendants' motion for leave to file an amended answer and counterclaim. The amended answer and counterclaim shall be filed within three (3) days of the filed date of the Court's order. The hearing set for August 18, 2017 shall be **vacated.**

IT IS SO ORDERED.

Dated: August 15, 2017

Hon. Gonzalo P. Curiel
United States District Judge