1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   DUNCAN LINDSEY,                      Case No.: 16-cv-00959-GPC (DHB)

12                         Plaintiffs,    **ORDER:**

13   v.
                                          **(1) GRANTING THE MOTIONS TO**
14                                        **FILE DOCUMENTS UNDER SEAL**
                                          **(ECF NOS. 46, 56);**
15   ELSEVIER INC., et al.,

16                        Defendants.     **(2) GRANTING MOTION FOR**
                                          **LEAVE TO FILE SUBMISSION**
17                                        **(ECF NO. 59);**

18
                                          **(3) RE: JOINT MOTIONS FOR**
19                                        **DETERMINATION OF DISCOVERY**
20                                        **DISPUTE (ECF NOS. 51, 53); AND**

21
                                          **(4) GRANTING JOINT MOTION**
22                                        **FOR EXTENSION OF TIME TO**
                                          **COMPLETE DISCOVERY (ECF NO.**
23                                        **60)**
24

25

26        Presently before the Court are the following motions filed by Plaintiff Duncan

27   Lindsey, Ph.D. ("Plaintiff") and Defendants Elsevier Inc., Elsevier B.V., and Elsevier Ltd.

28   (collectively "Elsevier"): (1) Joint Motion for Determination of Discovery Dispute to

                                          1

Compel Elsevier to Produce Financial Data for Plaintiff's Experts and to Extend Deadline for Submission of Experts' Reports (ECF No. 51); (2) Joint Motion for Determination of Discovery Dispute for Production of Tax Returns (ECF No. 53); (3) Elsevier's Motion for Leave to File Submission Regarding Testimony Relating to Pending Motion to Compel Tax Returns and Plaintiff's Objection and Response to this Submission (ECF No. 59); (4) Joint Motion for Extension of Time to Complete Discovery (ECF No. 60); and (5) two Motions to Seal (ECF No. 46, 56).

Having reviewed the parties' submissions and supporting exhibits, for the reasons set forth below, the Court: (1) **GRANTS** Plaintiff's motion to compel Elsevier to produce financial data (ECF No. 51); (2) **GRANTS IN PART** and **DENIES IN PART** Elsevier's motion to compel Plaintiff to produce his tax returns (ECF No. 53); (3) **GRANTS** Elsevier's motion for leave to file a submission regarding the motion to compel Plaintiff to produce his tax returns (ECF No. 59); (4) **GRANTS** the Joint Motion for Extension of Time to Complete Discovery (ECF No. 60); (5) **GRANTS** the Joint Motion to Seal (ECF No. 46); and (6) **GRANTS** the Motion to File Documents Under Seal (ECF No. 56).

## I.    BACKGROUND

Plaintiff commenced this action against Elsevier in San Diego Superior Court on March 17, 2016, alleging breach of contract, fraud, breach of fiduciary duty, constructive fraud, and breach of implied covenant of good faith and fair dealing.  (ECF No. 1-2, Exh. A ("Compl.").)  On April 30, 2016, the case was removed to federal court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, on the basis of diversity.  (ECF No. 1.)

In the Complaint, Plaintiff, a former tenured full Professor at the University of California, Los Angeles, alleges Elsevier failed to pay him royalties owed under a written contract for a scholarly research journal about children and youth services that Plaintiff developed and has edited for thirty-eight years and Elsevier published.  (Compl. at ¶¶ 1, 7.)  In 1978, Plaintiff and Elsevier's predecessor, Pergamon Press, entered into a written contract ("Journal Contract") to develop and publish a journal called *Children and Youth*

*Services Review* ("CYSR"), which became the premier research journal in the field of child welfare social work. (*Id*. at ¶ 1.)

Under the Journal Contract, Plaintiff was to receive each year 15% of the net subscription income received "in respect of institutional subscriptions to the journal over and above the first 750 institutional subscriptions" in the form of royalty payments. (*Id*. at ¶¶ 1, 17.) Plaintiff alleges Elsevier has never paid him any compensation in the form of journal subscription royalties, maintaining none was ever due. (*Id*. at ¶¶ 3, 6.) Elsevier and its predecessor repeatedly informed Plaintiff that the threshold of 750 subscriptions was never met. (*Id*. at ¶ 3.) Plaintiff alleges that Elsevier has obfuscated, misled, and failed to disclose the truth about the way it is calculating its subscriptions and his royalties. (*Id*. at ¶ 6.) In this lawsuit, Plaintiff seeks damages, disgorgement of profits, rescission, an accounting, and/or declaratory relief. (*Id*. at p. 19.)

## II. DISCUSSION

### A. Joint Motion for Determination of Discovery Dispute re: Financial Data

Presently before the Court is a Joint Motion for Determination of Discovery Dispute to Compel Elsevier to Produce Financial Data for Plaintiff's Experts and to Extend Deadline for Submission of Experts' Reports. (ECF No. 51.) Plaintiff moves to compel production of total revenue data, arguing that it is essential for his expert to conduct his damages analysis. (*Id*. at 2.) Plaintiff also seeks to extend the deadline for his experts to submit their reports, and sanctions against Elsevier for obstruction. (*Id*. at 2, 11.)

#### 1. Background

On February 2, 2017, Plaintiff served a Revised First Set of Requests for Production of Documents and a Revised First Set of Interrogatories. (ECF No. 51-1, Declaration of Jeffrey Valle ("Valle Decl."), at ¶¶ 4-5, Exhs. 1, 2.) In the revised set, Request for Production No. 1 seeks: "For each year during the period of 2006 through the present, DOCUMENTS sufficient to show the total gross annual income ELSEVIER received from INSTITUTIONS pursuant to ESAs [Elsevier Subscription Agreements or Elsevier License Agreements] that included ACCESS to the JOURNAL." (Valle Decl. at Exh. 1, p. 6.) In

addition, Interrogatory No. 1 seeks: "For each ESA from 2006 to the present that included ACCESS to the JOURNAL, state the total gross income ELSEVIER received pursuant to that ESA during each year." (*Id*. at Exh. 2, p. 3.)

Elsevier responded to these Requests for Production and Interrogatories on March 6, 2017. (*Id.* at ¶¶ 6-7, Exhs. 3, 4.) Subject to objections, Elsevier agreed to produce responsive, non-privilege documents sufficient to respond to Request No. 1 to the extent the documents were located after a reasonable search and diligent inquiry. (*Id.* at Exh. 3.) Elsevier also agreed, subject to objections, to produce documents from which the information requested in Interrogatory No. 1 can be derived. (*Id.* at Exh. 4.) In April and May 2017, the parties met and conferred regarding Elsevier's responses, disagreeing, among other things, on whether Elsevier's responses to Request No. 1 and Interrogatory No. 1 were sufficient. (*Id*. at ¶¶ 8-10, Exhs. 5-7.)

On May 31, 2017, after receiving input from Plaintiff's expert, Plaintiff served his Fourth Set of Requests for Production. (*Id.* at ¶ 11, Exh. 8.) Plaintiff claims the new Request No. 50 modifies Plaintiff's prior Request for Production No. 1 and Interrogatory No. 1. (*Id*.) Request for Production No. 50 seeks: "For each ELSEVIER CUSTOMER, for each year during the period January 1, 1997 through May 30, 2017, DOCUMENTS providing data showing the annual revenue received by ELSEVIER for online access to content contained in the Science Direct database, denominated in the currency used by the CUSTOMER." (*Id.*)

On June 30, 2017, Elsevier served its response to Request for Production No. 50, objecting on the following grounds: (1) vague and ambiguous; (2) overbroad and unduly burdensome; (3) fails to define "online access" and "content;" (4) does not relate to the manner in which Elsevier's business records are kept; (5) seeks documents not reasonably calculated to lead to the discovery of admissible evidence or relevant to the claims and defenses in this case by asking for production of documents related to journals other than CYSR and products that do not relate to CYSR; and (6) seeks highly confidential, proprietary and/or trade secret information. (*Id*. at ¶ 14, Exh. 11.) Subject to these

objections, Elsevier stated that it "has already produced a report, going as far back as such data is reasonably accessible, showing each CYSR customer, the customer's address, the products purchased year by year, and the price paid.  The report is over 23,000 lines (the equivalent of over 2.000 pages of data)."  (*Id.*)

Plaintiff now moves to compel production of documents responsive to Request No. 50, as well as extend the deadline for filing expert reports, and to sanction Elsevier in an amount of not less than $16,125.  (ECF No. 51.)

### 2.  Legal Standard

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure,

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The relevance standard is commonly recognized as one that is necessarily broad in scope. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507.  Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).  District courts also have broad discretion to limit discovery.  For example, a court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or the "proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).   "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and

supporting its objections." *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005)).

   3.   Analysis

Plaintiff contends that his expert requires the following information, at a minimum, to conduct a proper damages allocation analysis: (1) total annual revenue received from each Elsevier customer for each package deal that provided access to CYSR; and (2) article download and citation data for each Elsevier journal. (ECF No. 51 at 3.) Plaintiff states that Elsevier has agreed to produce – and has produced the majority of – the requested article download and citation data, but has not produced the total annual revenue requested. (*Id.*; Valle Decl. at ¶ 20.) In response, Defendant argues that the information requested is not relevant, is trade secret privileged, and would be unduly burdensome to produce. (ECF No. 51 at 14-20.)

Plaintiff argues that Elsevier sells its journals in many ways. One way is by entering into "package deals," whereby Elsevier's "customers pay a total price and in return receive a package of individual journals plus a bundle of additional journals, referred to as Collections." (ECF No. 51 at 2-3; Valle Decl. at Exh. 17.) Plaintiff contends the individual journals "sometimes include CYSR," but the Collections "almost always include CYSR." (ECF No. 51 at 8.) Plaintiff argues that although CYSR is included in the Collections Elsevier sells to its customers, he was paid no royalties from those sales or any other sale of subscription access to CYSR. (*Id.* at 3.)

Elsevier has produced revenue information for CYSR and all Collections containing CYSR, but not for the entire deal that includes access to CYSR. (*Id.* at 7; Valle Decl. at ¶¶ 15-16.) In order for Plaintiff's expert to conduct its allocation analysis, Plaintiff claims he needs "total revenues, by year, from each Elsevier customer that purchased paid access to CYSR through a packaged deal memorialized in a single agreement." (*Id.* at 4.) The single agreements Plaintiff refers to are Elsevier Subscription Agreements ("ESA"). (*Id.* at 8; *see also* Valle Decl. at Exh. 17.) Plaintiff argues that it is the "total price" in the ESA that is

relevant and that he needs, and not Elsevier's "arbitrary allocations" of the total price to CYSR subscriptions. (ECF No. 51 at 8.)

In response, Elsevier argues that Plaintiff is not entitled to highly sensitive and proprietary revenue information for subscriptions to journals that have nothing to do with CYSR. (*Id.* at 13.) Elsevier refutes Plaintiff's claim that journal subscriptions are sold in a "package deal." (*Id.*) Rather, Elsevier claims that "the contracts themselves show the specific and separate prices paid for each journal subscription." (*Id.*) Elsevier states that it has produced "thousands of pages of spreadsheets showing the name, address, and price paid for every single CYSR subscription, as well as whether the subscription was print, electronic, or both." (*Id.*) Elsevier claims it has also produced the "formula that it applies to allocate the revenue from Collections purchases to specific journals, including CYSR, and it has further produced the underlying usage, quality and size data, notwithstanding the clear language in the CYSR contract providing Elsevier with the right to determine commercial policy, including pricing and method of distribution, for CYSR." (*Id.* at 13-14.)

After consideration of the parties' arguments, the Court finds the requested information, as modified by the Joint Motion, to be relevant under Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ."). In the Joint Motion, Plaintiff modifies Request for Production No. 50 and limits the request to "total revenues from Elsevier customers who had access to CYSR during the relevant years." (ECF No. 51 at 5, n. 3.)[1]

---

[1]     In doing so, it appears Plaintiff has substantially modified this request. Although Request for Production No. 50 seeks annual revenue received by Elsevier "for online access to content contained in the Science Direct database" dating back to January 1, 1997, in his Complaint, Plaintiff alleges that CYSR did not move to Elsevier's online electronic system until in or around 2006. (*See* Valle Decl. at ¶ 11, Exh. 8; Compl. at ¶ 24.) Therefore, to the extent Elsevier's customers did not have online access to CYSR prior to 2006, Elsevier need not produce information prior to that year.

The Court finds this modification appropriate.

The Court further finds the Protective Order already issued in this case pursuant to Rule 26(c) to be sufficient to protect any confidential and/or trade secret information contained in the requested information. *See* Fed. R. Civ. P. 26(c)(1)(G) (permitting a court, for good cause, to issue a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way"); ECF No. 18 (Protective Order). Prior to issuing the Protective Order, which was disputed in this case, the Court took into consideration Elsevier's concerns about disclosure of its highly confidential and protected business and trade secret information, including its pricing and financial information, identity of subscribers, and formulas for allocation revenues.[2] (*See* ECF No. 17 at 6-7.) The Court subsequently entered a Protective Order in the form agreed to by the parties, absent an Attorney's Eyes Only provision requested by Elsevier. (*See* ECF No. 17 at 9; ECF No. 12-1 at ¶ 7.)

The Court also finds the requested information, as modified by the Joint Motion, to be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). Elsevier asserts that it spent 120 managerial-level hours to prepare and produce the initial report, which required it to retrieve, compile and reconcile data from multiple systems. (ECF No. 51 at 19-20.) Elsevier further states that for years prior to 2008, the data is stored in a retired database system that would require reconstruction and manual reconciliation, and countless additional hours. (*Id.* at 20.) Although the Court acknowledges the additional work might be time-consuming, given the potential

---

[2] Based on representations by the parties, it appears Elsevier has already produced a substantial amount of information it considers trade secret and/or confidential, pursuant to the Protective Order in this case. (*See*, *e.g.*, ECF No. 51-4 at ¶ 3.)

importance of the information to the case, Plaintiff's inability to access this information by any other means, and Elsevier's resources, the Court overrules Elsevier's objections.

Accordingly, the Court **GRANTS** Plaintiff's motion to compel Elsevier to produce documents responsive to Request for Request for Production No. 50, as modified by the Joint Motion. The Court does not find sanctions appropriate and **DENIES** Plaintiff's request for sanctions under Federal Rule of Civil Procedure 37. In making this finding, the Court acknowledges Elsevier's substantial production thus far in this case,[3] and takes into consideration its findings below, in which it grants in part Elsevier's motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii) ("the court must not order this payment if . . . other circumstances make an award of expenses unjust"). The Court will address Plaintiff's request for an extension of the deadline to submit expert reports below when it addresses the parties' joint motion to extend all expert and discovery deadlines.

**B.** **Joint Motion for Determination of Discovery Dispute re: Tax Returns and Motion for Leave to File Submission re: Motion**

Also presently before the Court is a Joint Motion for Determination of Discovery Dispute For Production of Tax Returns. (ECF No. 53.) Elsevier moves to compel the production of Plaintiff's tax returns for the past 39 years. (*Id.*) Plaintiff opposes the motion, arguing that the taxpayer privilege applies to his California returns, and that his Oregon returns are not relevant. (*Id.*)

After taking Plaintiff's deposition, Elsevier filed a Motion for Leave to File Submission regarding Plaintiff's testimony, which it contends relates to the pending Joint Motion to compel Plaintiff's tax returns. (ECF No. 59.) Elsevier argues that "testimony and instructions given at that deposition are directly relevant and provide new evidence regarding the issues briefed in the pending Joint Motion." (*Id.*) Plaintiff opposes the motion, arguing that the instructions and testimony do not provide new evidence relevant

---

[3] The parties jointly represent that Elsevier has produced more than five hundred thousand pages of documents thus far in the case. (ECF No. 60 at 3.)

to the pending motion. (*Id.*) After reviewing the motion for leave, the Court finds new information contained in the submission to be helpful, particularly information concerning which years Plaintiff filed a California tax return, and therefore **GRANTS** the motion. The Court will therefore take into consideration the information contained within the submission in deciding the Joint Motion.

### 1. Background

Elsevier seeks 39 years of Plaintiff's joint tax returns, which were filed in both California and Oregon. In its Requests for Production, Elsevier requested documents reflecting or substantiating any monies Plaintiff received from Elsevier related to CYSR, and any monies Plaintiff paid to a person retained to provide services for CYSR. (ECF No. 53-1 at Exhs. A, C.) Plaintiff produced documents reflecting monies Plaintiff received from Elsevier, but did not construe any of the requests as seeking the production of tax returns. (ECF No. 53-2 at ¶¶ 2, 3; ECF No. 53-1 at Exh. B.) During meet and confer efforts, Elsevier demanded production of Plaintiff's tax returns for the past 39 years. (ECF No. 53-2 at ¶ 5.) Plaintiff argues he initially agreed to produce some returns, but not returns for all 39 years, and his wife never agreed to any production. (ECF No. 53-2 at ¶¶ 5-6; ECF No. 53-1 at ¶¶ 43-47.) Plaintiff ultimately did not produce any tax returns. (ECF No. 53-2 at ¶ 6; ECF No. 53-1 at ¶¶ 46-48.)

Based on the information before the Court, it appears that Plaintiff and his wife filed joint tax returns in California from approximately 1994 until the present. (Compl. at ¶¶ 7, 21; ECF No. 59-2 at 7.) Plaintiff and his wife also filed joint tax returns in Oregon from approximately 1978 to 1994, and again from approximately 2011 to the present, when Plaintiff and his wife moved back to Oregon for at least half of the year. (Compl. at ¶ 21; ECF No. 53 at 7, 21; ECF No. 59-2 at 7-8.)

### 2. Legal Standard

Because this action was removed to federal district court under diversity jurisdiction, the substantive law of California applies, including on matters of privilege. *See Conestoga Servs. Corp. v. Exec. Risk Indem., Inc.*, 312 F.3d 976, 980-81 (9th Cir. 2002) (citations

omitted); *Star Editorial, Inc. v. U.S. D. Ct. for Cent. D. of Cal.*, 7 F.3d 856, 859 (9th Cir. 1993); Fed. R. Evid. 501; *see also* ECF No. 1.

California courts have interpreted state taxation statutes as creating a statutory privilege against disclosing tax returns. *Schnabel v. Super. Ct.*, 5 Cal. 4th 704, 718-21 (1993); *Weingarten v. Super. Ct.*, 102 Cal. App. 4th 268, 274 (2002). The purpose of the privilege is to encourage the voluntary filing of tax returns and truthful reporting of income, and thus to facilitate tax collection. *Webb v. Standard Oil Co.*, 49 Cal. 2d 509, 513 (1957). This statutory tax return privilege, however, is not absolute. *Schnabel*, 5 Cal. 4th at 721. The privilege will not be upheld when: (1) the circumstances indicate an intentional waiver of the privilege; (2) the gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy greater than that of the confidentiality of tax returns is involved. *Id*. "A trial court has broad discretion in determining the applicability of a statutory privilege." *Weingarten*, 102 Cal. App. 4th at 274. The requesting party bears the burden of demonstrating that an exception applies. *See Schnabel*, 5 Cal. 4th at 721; *Lawson v. GrubHub, Inc.*, No. 15-CV-05128-JSC, 2017 WL 1684964, at *2 (N.D. Cal. May 3, 2017).

Oregon does not have a similar taxpayer privilege. *See State ex rel. Thesman v. Dooley*, 270 Or. 37, 45 (1974). Under Oregon law, tax returns are discoverable if they are "relevant to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Or. R. Civ. P. 36; *see also* Or. R. Civ. P. 43 (production of documents); *State ex rel. Thesman*, 270 Or. at 44 (applying Oregon's prior discovery standard of good cause, which tracked Federal Rule of Civil Procedure 34's prior good cause standard, which has also been eliminated).

Similarly, under federal law, tax returns and related documents do not enjoy an absolute privilege from discovery. *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *Heathman v. U.S. D. Ct. for the Cent. D. of Cal.*, 503 F.2d 1032, 1035 (9th Cir. 1974). "Nevertheless, a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Premium Serv. Corp.*, 511 F.2d at 229.

"Accordingly, the Court may only order the production of plaintiff's tax returns if they are relevant and when there is a compelling need for them because the information sought is not otherwise available." *Aliotti v. The Vessel SENORA*, 217 F.R.D. 496, 497-98 (N.D. Cal. 2003) (citations omitted); *see also A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006). "The party seeking production has the burden of showing relevancy, and once that burden is met, the burden shifts to the party opposing production to show that other sources exist from which the information is readily obtainable." *A. Farber & Partners, Inc.*, 234 F.R.D. at 191.

### 3. Analysis

#### a. *California Tax Returns*

Plaintiff and his wife have not intentionally waived the privilege as to their joint California tax returns. Both spouses have filed declarations stating they do not want or intend to waive the privilege against disclosure of their joint tax returns. (ECF No. 53-3 at ¶ 4; ECF No. 53-4 at ¶ 2.) Although Plaintiff may have unintentionally waived the privilege as to some of his tax returns by producing an October 1993 letter that he sent to the IRS and other documentation related to an audit, he alone cannot waive the privilege. (*See* ECF No. 53-1 at ¶ 11, Exh. Y; ECF No. 53-2 at Exhs. C, D.) "In the absence of a waiver by each of the holders of the privilege, the court may not compel disclosure of joint federal or joint state income tax returns, or any information contained therein." *Coate v. Super. Ct.*, 81 Cal. App. 3d 113, 115 (1978). As Plaintiff's wife has never waived the privilege, the Court finds that there has been no intentional waiver of the privilege as to their joint tax returns.

The gravamen of this lawsuit is also not inconsistent with the assertion of the privilege. Elsevier argues that Plaintiff has placed the amount of his editorial subsidies at issue by alleging a joint venture and seeking *quantum meruit* for the reasonable value of

his editorial services in his Complaint,[4] by producing information showing that he claimed editorial subsidies as expenses on his taxes, and by listing himself as a witness on editorial expenses on his initial disclosures.  However, the Court finds that the gravamen of this lawsuit does not relate to Plaintiff's editorial subsidies or how he treated them on his taxes.

In the Complaint, Plaintiff alleges that he was entitled to "receive compensation *in the form of* journal subscription royalties [for his work on CYSR], but Elsevier never paid him any compensation, maintaining that none were ever due." (Compl. at ¶ 3 (emphasis added).)  Plaintiff alleges that he was entitled to receive an editorial subsidy, and did receive one to cover some of the expenses of the journal, but the gravamen of the lawsuit is that he "never received any Subscription Royalties at all from Elsevier, despite the success of [CYSR]." (*Id.* at ¶ 4; *see also* ¶¶ 28-32.)  In this regard, Plaintiff alleges Elsevier breached the Journal Contract "by failing to pay [Plaintiff] Subscription Royalties due under the Journal Contract" and committed fraud by intentionally concealing, suppressing, and misleading Plaintiff "about the true facts concerning the way it was calculating the number of institutional subscribers, the existing number of institutional subscribers and the Subscription Royalties due to [Plaintiff]." (*Id.* at ¶¶ 36, 45.)  For Plaintiff's remaining causes of action, Plaintiff relies solely on allegations that Elsevier failed to disclose the correct number of institutional subscriptions, and to pay subscription royalties, as the basis for his claims. (*See id.* at ¶¶ 51-76.)

Plaintiff does not make any claim in the Complaint that Elsevier failed to properly pay him for his editorial expenses in working on the journal.  Although Plaintiff alleges the

---

[4]     Plaintiff has agreed not to seek *quantum meruit* relief under his rescission claim, which he sought as an alternative remedy. (*See* Compl. at ¶¶ 68-71; ECF No. 53 at 13.)  Therefore, unlike other cases in which courts have found the gravamen of the lawsuit inconsistent with the application of the privilege because the tax returns sought "may verify or contradict" a plaintiff's damages claim, the tax returns here will not do so.  *See, e.g., Barrous v. BP P.L.C.*, No. C 10-02944 LHK PSG, 2011 WL 1431826, at *4 (N.D. Cal. Apr. 14, 2011).

editorial subsidy he received did not cover his full expenses, he does not make any claim for payment of those expenses.[5] The Journal Contract attached to the Complaint states that Pergamon was to pay a $2,000 editorial subsidy for the first year of operation. (Compl. at Exh. A, p. 3.) Plaintiff alleges as such in the Complaint, adding that in 1989, Pergamon increased the editorial subsidy to $2,000 per issue. (Compl. at ¶¶ 4, 20.) He further alleges that in 1996, 1999, and 2000, the number of issues increased by two per year, such that CYSR is now published 12 times per year. (*Id*. at ¶ 20.) In opposition to Elsevier's motion, Plaintiff attaches a copy of the 1989 letter agreement with Pergamon. (ECF No. 53-3 at ¶ 3, Exh. A.) The letter asks that Plaintiff "include an invoice for $2000 with each issue of the journal" sent to the production office, as that "is the simplest way to assure proper reimbursement within our system." (*Id*.) Plaintiff claims Elsevier never asked for expense reports or receipts, and he never provided them, nor kept them. (*Id*. at ¶ 5.) He claims the payments were fixed, regardless of actual expenses incurred. (*Id*. at ¶¶ 5-8.) By 2008, the amount of the fixed editorial subsidy was "$3,350 per issue (or $40,200 per year for the 12 issues each year)." (*Id*. at ¶ 7.) The parties do not dispute that these amounts were paid, as agreed upon, in fixed amounts, for the purpose of covering Plaintiff's expenses. The parties also do not dispute that Plaintiff did not provide, nor was he required to provide, Elsevier with expense reports or receipts to substantiate these payments. The 1989 letter agreement simply required an "invoice."

---

[5] In the Complaint, Plaintiff's alleges a joint venture to establish a fiduciary relationship to support his claims for fraud, breach of fiduciary duty, and constructive fraud, among others. (*See e.g.,* Compl. at ¶¶ 39, 52, 58.) Pleading the existence of a joint venture is sufficient to establish the existence of a fiduciary duty. *See Second Measure, Inc. v. Kim*, 143 F. Supp. 3d 961, 979 (N.D. Cal. 2015). Nothing in the Complaint suggests, however, that Plaintiff is seeking reimbursement for any unpaid editorial expenses or that he seeks an accounting of such expenses. Moreover, Elsevier has not shown that the establishment of all the essential elements of Plaintiff's case, including an accounting of Elsevier's profits, will be impossible without Plaintiff's tax returns. *See Wilson v. Super. Ct.*, 63 Cal. App. 3d 825, 830 (1976).

On August 15, 2017, Elsevier filed a First Amended Answer, Affirmative Defenses and Counterclaims. (ECF No. 55.) Elsevier's counterclaims include: (1) breach of contract, (2) fraud, and (3) conversion. (*Id.* at ¶¶ 102-135.) These counterclaims rely, in part, on the allegation that Plaintiff used "CYSR and expenses claimed to have been incurred on behalf of CYSR for [Plaintiff's] own personal benefit and the benefit of other business ventures in which [Plaintiff] had a stake." (*See id.* at ¶¶ 106; *see also* ¶¶ 109-135.) Elsevier alleges that it discovered Plaintiff "was using personnel that he claimed to be working on CYSR, and expenses related to CYSR, for his own personal benefit and that of his private business ventures" through discovery in this case. (*Id.* at ¶ 109.) Specifically, Elsevier alleges Plaintiff "misrepresented the credentials, scope of work, and/or purpose" of "individuals in India, including an individual named Renji Mathew and other staff," which Plaintiff represented he hired to assist on CYSR. (*Id.* at ¶ 112.) Elsevier claims Plaintiff hired Renji "by at least 2005 or 2006." (*Id.* at ¶ 113.) During this time period, Elsevier claims Plaintiff was involved with several software companies and Renji was hired to assist with those companies, and not CYSR. (*Id.* at ¶¶ 111-131.) Plaintiff alleges that Plaintiff's refusal to produce his tax returns has prevented Elsevier from determining the true nature of Renji's work and other expenses Plaintiff purports to have incurred on behalf of CYSR. (*See id.* at ¶ 127.)

The parties do not dispute that Elsevier agreed to pay a portion of Plaintiff's fixed editorial subsidy to Renji Mathews beginning in or around 2008. (ECF No. 53-3 at ¶ 8; ECF No. 55 at ¶¶ 118-120; ECF No. 53 at 21.) Instead, the parties dispute the extent to which Renji Mathews and his company worked on CYSR, if at all. (*See* ECF No. 53-3 at ¶ 8; ECF No. 53 at ¶¶ 118-129.) Plaintiff also claims that Elsevier just split the fixed editorial subsidy payment "into two parts" when it sent a portion to Renji Mathews as a "courtesy" to Plaintiff; "it did not change or increase the total per issue or annual payments." (ECF No. 53-3 at ¶ 8.) Plaintiff further claims that when Elsevier stopped paying any portion of the editorial subsidy to Renji Mathews, it continued to pay him a check for $3,350 per issue. (*Id.*) Elsevier, on the other hand, appears to claim that it would

not have split the payment and sent a portion to Renji Mathews if he did not render services in that amount on behalf of CYSR. (*See* ECF No. 53 at ¶ 133.)

Although California case law refers to an exception to the privilege when the *privilege holder* puts his or her tax returns at issue,[6] the Court has taken into consideration Elsevier's counterclaims. However, even considering Elsevier's counterclaims, the Court still finds that the gravamen of the lawsuit is not inconsistent with the assertion of the privilege. Plaintiff's tax returns are not at the heart of Elsevier's counterclaims. Determining Renji Mathew's involvement with CYSR, including his credentials, scope of work, and/or purpose, does not require the production of Plaintiff's tax returns. Moreover, Elsevier has not identified what information in Plaintiff's tax returns will assist in meeting its burden of proving its counterclaims. "The fact that financial records are difficult to obtain or that a tax return would be helpful, enlightening or the most efficient way to establish financial worth is not enough" to overcome the privilege. *Weingarten*, 102 Cal. App. 4th at 276. In addition, the fact that a tax return can be used for impeachment is also insufficient to overcome the privilege. *Sav-On Drugs, Inc. v. Super. Ct.*, 15 Cal. 3d 1, 6 (1975). Thus, Elsevier has failed to establish this exception to the taxpayer privilege against disclosure.

Lastly, Elsevier does not identify any public policy that would be harmed if Plaintiff does not produce his tax returns. This exception "is narrow and applies when warranted by a legislatively declared public policy." *Weingarten*, 102 Cal. App. 4th at 274. The "[p]ublic policy favoring discovery in civil litigation is not, by itself, sufficiently compelling to overcome the privilege." *Fortunato v. Super. Ct.*, 114 Cal. App. 4th 475,

---

[6]      *See Wilson*, 63 Cal. App. 3d at 830 (finding the gravamen of the plaintiff's lawsuit inconsistent with the continued assertion of the taxpayer's privilege where the plaintiff's complaint against her accountants for negligence and improper advice placed in issue the existence and the content of her tax returns and the tax computations thereon). The privilege does not permit a privilege holder to have his cake and eat it too. *Id.* at 829 (citing *City & Cnty. of S.F. v. Super. Ct.*, 37 Cal. 2d 227, 232 (1951)).

483 (2003).

As Elsevier has not established an exception to the privilege, the Court **DENIES** its motion to compel the production of Plaintiff's California tax returns, and Plaintiff's federal tax returns for the same years. *See Wilson*, 63 Cal. App. 3d at 828 ("[S]ince federal income tax returns contain substantially the same information as the state return for the corresponding period, copies of the taxpayer's federal returns are likewise privileged.").

### b. *Oregon Tax Returns*

Plaintiff and his wife filed joint tax returns in Oregon from approximately 1978 to 1994, and again from approximately 2011 to the present, when Plaintiff and his wife moved back to Oregon for at least half of the year. (Compl. at ¶ 21; ECF No. 53 at 7, 21; ECF No. 59-2 at 7-8.) Unlike California, Oregon does not have a taxpayer privilege, and Plaintiff does not assert one over these returns. (ECF No. 53 at 21.) Instead, Plaintiff only argues there is no good cause to compel their production as Plaintiff has not put them at issue, and any returns that pre-date 2008 would have nothing to do with any issues in the case. (*Id.*)

Both parties assume Oregon's general discovery standard applies in the absence of a state privilege. However, federal courts sitting in diversity often apply federal law to motions to compel tax returns in the absence of a state taxpayer privilege. *See Ronald C. Fish, a law corp. v. Watkins*, No. CIV0300067PHXSMM, 2006 WL 411302, at *1-2 (D. Ariz. Feb. 17, 2006) (applying federal law to motion to compel tax returns in diversity case); *Adkins v. TFI Family Servs., Inc.*, No. 13-CV-2579-DDC-GLR, 2017 WL 3130587, at *6-7 (D. Kan. July 24, 2017) (same); *Gregory v. Gregory*, No. 2:15-cv-0320 (WHW) (CLW), 2016 WL 6122456, at *11 (D. N.J. Oct. 18, 2016) (same). This Court also finds it appropriate to apply federal law in the absence of a state privilege. Accordingly, production of Plaintiff's Oregon tax returns is only appropriate if they are relevant and there is a compelling need for them because the information sought is not otherwise

available. *Aliotti*, 217 F.R.D. at 497-98.[7]

As to any Oregon returns that pre-date 2008, the Court finds they are generally not relevant to Plaintiff's Complaint or Elsevier's counterclaims. However, because Plaintiff produced, and intends to rely on documentation related to a 1993 tax audit, the Court finds any tax returns related to that audit to be relevant. In addition, the Court finds Plaintiff's Oregon tax returns – personal and business – for the years he filed them from 2008 to the present to be relevant.

As Elsevier has established relevance, Plaintiff bears the burden of showing that other sources exist from which the information is readily available. *A. Farber & Partners, Inc.*, 234 F.R.D. at 191. Plaintiff has not done so. Instead, Plaintiff has responded to discovery stating that he never had, or has not maintained, many of his business records, including documents related to Renji Mathews. (*See* ECF No. 53-1 at Exhs. U, V, W; ECF No. 53-3 at ¶ 5.) Accordingly, the Court **GRANTS** Elsevier's motion to compel production of Plaintiff's Oregon and federal tax returns for the years related to the 1993 tax audit, and Plaintiff's Oregon tax returns – personal and business – for the years he filed them from 2008 to the present.

## III.  CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1.  Plaintiff's motion to compel documents responsive to Request for Production No. 50 is **GRANTED**, as modified above (ECF No. 51);

2.  Elsevier's motion to compel Plaintiff's tax returns is **GRANTED IN PART** and **DENIED IN PART**, as set forth above (ECF No. 53); and

3.  Elsevier's motion for leave to file its submission regarding testimony related to the pending motion to compel Plaintiff's tax returns is **GRANTED** (ECF No. 59).

4.  All documents ordered produced by this Order shall be produced no later than

---

[7]    The Court notes that even if the Court applied Oregon's discovery standard, the outcome would be the same.

18

**November 17, 2017**.

5.     In addition, for good cause shown, the Court **GRANTS** the Joint Motion to Seal (ECF No. 46); **GRANTS** Plaintiff's Motion to File Documents Under Seal (ECF No. 56); and **GRANTS** the parties' Joint Motion for Extension of Time to Complete Discovery (ECF No. 60).

Accordingly, the Court modifies the Scheduling Order as follows:

1.     By **December 22, 2017**, each party shall comply with the disclosure provisions in Rule 26(a)(2)(A) and (B) of the Federal Rules of Civil Procedure.  This disclosure requirement applies to all persons retained or specially employed to provide expert testimony, or whose duties as an employee of the party regularly involve the giving of expert testimony.  **Except as provided in the paragraph below, any party that fails to make these disclosures shall not, absent substantial justification, be permitted to use evidence or testimony not disclosed at any hearing or at the time of trial.  In addition, the Court may impose sanctions as permitted by Fed. R. Civ. P.  37(c).**

2.     Any party shall supplement its disclosure regarding contradictory or rebuttal evidence under Fed. R. Civ. P. 26(a)(2)(D) and 26(e) by **January 26, 2018**.

3.     All discovery shall be completed by all parties by **February 23, 2018**. "Completed" means that all discovery under Rules 30-36 of the Federal Rules of Civil Procedure, and discovery subpoenas under Rule 45, must be initiated a sufficient period of time in advance of the cut-off date, **so that it may be completed** by the cut-off date, taking into account the times for service, notice and response as set forth in the Federal Rules of Civil Procedure.  **Counsel shall promptly and in good faith meet and confer with regard to all discovery disputes in compliance with Local Rule 26.1(a).**  The Court expects counsel to make every effort to resolve all disputes without court intervention through the meet and confer process.   If the parties reach an impasse on any discovery issue, counsel shall file an appropriate joint motion within the time limit and according to the procedures outlined in Magistrate Judge David H. Bartick's Civil Chambers Rules, which are posted on the Court's website.  **A failure to comply in this regard will result**

**in a waiver of a party's discovery issue. Absent an order of the Court, no stipulation continuing or altering this requirement will be recognized by the Court.**

4.      Please be advised that failure to comply with any discovery order of the Court may result in the sanctions provided for in Fed. R. Civ. P. 37, including a prohibition on the introduction of experts or other designated matters in evidence.

5.      All pretrial motions, including those addressing Daubert issues related to dispositive motions must be filed by **March 26, 2018**. Pursuant to Honorable Gonzalo P. Curiel's Civil Pretrial & Trial Procedures, all motions for summary judgment shall be accompanied by a separate statement of undisputed material facts. Any opposition to a summary judgment motion shall include a response to the separate statement of undisputed material facts. Counsel for the moving party must obtain a motion hearing date from the law clerk of the judge who will hear the motion. Motion papers MUST be filed and served the same day of obtaining a motion hearing date from chambers. A briefing schedule will be issued once a motion has been filed. The period of time between the date you request a motion date and the hearing date may vary. Please plan accordingly. Failure to make a timely request for a motion date may result in the motion not being heard.

6.      A Mandatory Settlement Conference shall be conducted on **June 13, 2018** at **10:00 a.m.** in the chambers of Magistrate Judge David H. Bartick. Counsel shall submit settlement statements **directly** to Judge Bartick's chambers by **June 6, 2018**.[8] The parties may either submit confidential settlement statements or may exchange their settlement statements. Each party's settlement statement shall set forth the party's statement of the case, identify controlling legal issues, concisely set out issues of liability and damages, and shall set forth the party's settlement position, including the last offer or demand made by that party, and a separate statement of the offer or demand the party is prepared to make at

---

[8]      Statements under 20 pages in length, including attachments and exhibits, shall be e-mailed to chambers at efile_Bartick@casd.uscourts.gov. Statements exceeding 20 pages in length, including attachments and exhibits, must be delivered directly to chambers.

the settlement conference.  **The settlement conference briefs shall not be filed with the Clerk of the Court.**

All named parties, all counsel, and any other person(s) whose authority is required to negotiate and enter into settlement shall appear <u>in person at the conference</u>.  The individual(s) present at the Mandatory Settlement Conference with settlement authority must have the unfettered discretion and authority on behalf of the party to:  1) fully explore all settlement options and to agree during the Mandatory Settlement Conference to any settlement terms acceptable to the party (*G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 653 (7th Cir. 1989)), 2) change the settlement position of a party during the course of the Mandatory Settlement Conference (*Pitman v. Brinker Int'l, Inc.*, 216 F.R.D. 481, 485-86 (D. Ariz. 2003)), and 3) negotiate a settlement without being restricted by any predetermined level of authority (*Nick v. Morgan's Foods, Inc.*, 270 F.3d 590, 596 (8th Cir. 2001)).

Governmental entities may appear through litigation counsel only.  As to all other parties, appearance by litigation counsel only is <u>not</u> acceptable.  Retained outside corporate counsel <u>shall not</u> appear on behalf of a corporation as the party who has the authority to negotiate and enter into a settlement.  **The failure of any counsel, party or authorized person to appear at the Mandatory Settlement Conference as required shall be cause for the immediate imposition of sanctions.**  All conference discussions will be informal, off the record, privileged, and confidential.

7.     Pursuant to Honorable Gonzalo P. Curiel's Civil Pretrial & Trial Procedures, the parties are excused from the requirement of Local Rule 16.1(f)(2)(a); no Memoranda of Law or Contentions of Fact are to be filed.

8.     Counsel shall comply with the pre-trial disclosure requirements of Fed. R. Civ. P. 26(a)(3) by **June 29, 2018**.  Failure to comply with these disclosure requirements could result in evidence preclusion or other sanctions under Fed. R. Civ. P. 37.

9.     Counsel shall meet and take the action required by Local Rule 16.1(f)(4) by **July 6, 2018**.  At this meeting, counsel shall discuss and attempt to enter into stipulations

16-cv-00959-GPC (DHB)

and agreements resulting in simplification of the triable issues. Counsel shall exchange copies and/or display all exhibits other than those to be used for impeachment. The exhibits shall be prepared in accordance with Local Rule 16.1(f)(4)(c). Counsel shall note any objections they have to any other parties' Pretrial Disclosures under Fed. R. Civ. P. 26(a)(3). Counsel shall cooperate in the preparation of the proposed pretrial conference order.

10. Counsel for Plaintiff will be responsible for preparing the pretrial order and arranging the meetings of counsel pursuant to Civil Local Rule 16.1(f). By **July 13, 2018**, Plaintiff's counsel must provide opposing counsel with the proposed pretrial order for review and approval. Opposing counsel must communicate promptly with Plaintiff's attorney concerning any objections to form or content of the pretrial order, and both parties shall attempt promptly to resolve their differences, if any, concerning the order.

11. The Proposed Final Pretrial Conference Order, including objections to any other parties' Fed. R. Civ. P. 26(a)(3) Pretrial Disclosures shall be prepared, served and lodged with the assigned district judge by **July 20, 2018**, and shall be in the form prescribed in and comply with Local Rule 16.1(f)(6).

12. The final Pretrial Conference is scheduled on the calendar of the **Honorable Gonzalo P. Curiel** on **July 27, 2018** at **1:30pm**. The Court will set a trial date during the pretrial conference. The Court will also schedule a motion in limine hearing date during the pretrial conference.

13. The parties must review the chambers' rules for the assigned district judge and magistrate judge.

14. A post-trial settlement conference before a magistrate judge may be held within 30 days of verdict in the case.

15. The dates and times set forth herein will not be modified except for good cause shown.

16. Briefs or memoranda in support of or in opposition to all motions noticed for the same motion day shall not exceed twenty-five (25) pages in length, per party, without

16-cv-00959-GPC (DHB)

leave of the judge who will hear the motion. No reply memorandum shall exceed ten (10) pages without leave of a district court judge. Briefs and memoranda exceeding ten (10) pages in length shall have a table of contents and a table of authorities cited.

     IT IS SO ORDERED.

Dated: October 10, 2017

LOUISA S PORTER
United States Magistrate Judge

16-cv-00959-GPC (DHB)